UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| IVANI, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>LG ELECTRONICS, INC. and<br>LG ELECTRONICS U.S.A., INC.,<br><br>*Defendants*. | Civil Action No. 2:26-cv-964<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Proxense, LLC ("Proxense" or "Plaintiff") files this Complaint for patent infringement against LG Electronics Inc. ("LGE") and LG Electronics U.S.A., Inc. ("LGEUS") (collectively, "LG" or "Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq., including 35 U.S.C. § 271.

2. Proxense alleges that LG infringes, directly and indirectly, U.S. Patent Nos. 9,418,205 (the "'205 Patent"); 9,807,091 (the "'091 Patent"); 10,171,460 (the "'460 Patent"); 11,095,640 (the "'640 Patent"); 8,508,336 (the "'336 Patent"); 8,918,854 (the "'854 Patent"); 9,450,956 (the "'956 Patent"); 9,251,332 (the "'332 Patent"); and 11,086,979 (the "'979 Patent") (collectively, the "Asserted Patents"), through at least two families of products and services: (a) LG's "AI" smart televisions with voice-biometric user recognition and per-user personalization (the "Accused Personalization TVs"); and (b) LG's All-in-One Thin Client terminals for healthcare with built-in dual-band RFID proximity-badge readers, which LG designs, markets,

sells, demonstrates, and supports specifically for use in proximity-badge single sign-on systems in hospitals and other healthcare facilities (the “Accused Healthcare Terminals”).

3. Proxense seeks damages adequate to compensate for LG's infringement, enhanced damages, and injunctive relief.

## THE PARTIES

4. Plaintiff Proxense, LLC is a Delaware limited liability company with its principal place of business at 689 NW Stonepine Drive, Bend, Oregon 97703.

5. Defendant LGE is a corporation organized under the laws of the Republic of Korea, with its principal place of business at LG Twin Towers, 128 Yeoui-daero, Yeongdeungpo-gu, Seoul 07336, Republic of Korea. LGE does business in Texas and in this District, directly and through subsidiaries and intermediaries, and offers its products and services, including products accused of infringement herein, to customers located in Texas and in this District. LGE may be served with process pursuant to the provisions of the Hague Convention.

6. Defendant LGEUS is a Delaware corporation with its principal place of business at 111 Sylvan Avenue, North Building, Englewood Cliffs, New Jersey 07632. LGEUS is a wholly owned subsidiary of LGE and is registered to do business in the State of Texas. LGEUS has regular and established places of business within this District, including at 2153 Eagle Parkway, Fort Worth, Texas 76177 and 14901 Beach Street, Fort Worth, Texas 76177. LGEUS may be served with process through its registered agent, United States Corporation Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

7. LG develops, designs, manufactures, imports, distributes, markets, offers to sell, sells, demonstrates, and supports the Accused Personalization TVs and the Accused Healthcare

Terminals in the United States, including in Texas and in this District, directly and through authorized distributors, resellers, and solution partners. Upon information and belief, LGE directs, authorizes, and/or ratifies LGEUS's activities relating to the importation, distribution, marketing, and sale of the accused products in the United States, and LGE and LGEUS operate in an integrated manner with coordinated product development, branding, marketing, sales, and distribution strategies.

8. Upon information and belief, LG maintains authorized retailers, distributors, and channel partners that offer and sell the accused products throughout this District, and LG's business-solutions organization markets and sells the Accused Healthcare Terminals to hospitals and health systems in Texas, including health systems operating facilities within this District.

**JURISDICTION AND VENUE**

9. This Court has exclusive subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq.

10. This Court has personal jurisdiction over each Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Each Defendant has conducted and continues to regularly conduct business within the State of Texas and this District, has purposefully and voluntarily placed the accused products into the stream of commerce through established distribution channels with the expectation that they will be purchased and used in this District, and has committed acts of patent infringement within this District as alleged more particularly below. In addition, or in the alternative, LGE is subject to this Court's personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

11. Defendants have repeatedly acknowledged or not contested this Court's personal jurisdiction over them in recent patent actions in this District. *See, e.g., Advanced Coding Techs. LLC v. LG Elecs. Inc.,* No. 2:22-cv-00501-JRG, Dkt. 16 (E.D. Tex. Apr. 27, 2023) ("LG[E] admits that this Court has personal jurisdiction over LG[E]"; "LGEUS admits that it conducts business in the Eastern District of Texas"); *Sovereign Peak Ventures, LLC v. LG Elecs., Inc.,* No. 2:20-cv-00107-JRG, Dkt. 14 (E.D. Tex. Aug. 5, 2020); *WFR IP LLC v. LG Elecs., Inc.,* No. 2:22-cv-00245-RWS-RSP, Dkt. 16 (E.D. Tex. Nov. 23, 2022). LGE has likewise availed itself of this forum as a plaintiff, bringing its own patent infringement claims in this District. *See LG Elecs. Inc. v. TCL Elecs. Holdings Ltd.,* No. 2:22-cv-00122-JRG, Dkt. 1 (E.D. Tex. Apr. 21, 2022).

12. Proxense's causes of action arise directly from LG's business contacts and other activities in the State of Texas and this District, and LG has derived substantial revenues from its infringing acts within the State of Texas and this District.

13. Venue is proper as to LGE pursuant to 28 U.S.C. § 1391(c)(3) because LGE is a foreign corporation not resident in the United States and may therefore be sued in any judicial district, and the joinder of LGE shall be disregarded in determining where the action may be brought with respect to other defendants.

14. Venue is proper as to LGEUS pursuant to 28 U.S.C. § 1400(b) because LGEUS has committed acts of infringement in this District and has regular and established places of business in this District, including its facilities at 2153 Eagle Parkway, Fort Worth, Texas 76177 and 14901 Beach Street, Fort Worth, Texas 76177.

15. LGEUS owns its places of business in this District: Denton County property tax records reflect that LGEUS owns the property at 14901 Beach Street, Fort Worth, Texas 76177

(Denton County tax account 657779DEN) and the property at 2153 Eagle Parkway, Fort Worth, Texas 76177 (Denton County tax account 970177DEN).

16. LGEUS's Beach Street facility is a distribution center, warehouse, and logistics facility from which LGEUS stores, distributes, ships, and supports the sale of LG products, including the accused products, to customers and retailers in this District and throughout the United States. LG itself describes its "longtime presence as a corporate citizen in Fort Worth, where its million-square-foot distribution center for consumer electronics and home appliances has been located for three decades," and in 2024 LG announced its first U.S. factory for producing EV charging stations at 2153 Eagle Parkway in Fort Worth. (LG USA press release, "LG Opens First US Factory to Produce Advanced EV Chargers," https://www.lg.com/us/press-release/lg-opens-first-us-factory-to-produce-advanced-ev-chargers.)

17. Upon information and belief, Defendants have admitted or not contested proper venue in this District in other recent patent infringement actions. *See, e.g., Celerity IP, LLC v. LG Elecs.,* No. 2:23-cv-0316-JRG-RSP, Dkt. 21, ¶ 13 (E.D. Tex. Nov. 27, 2023); *SpaceTime3D, Inc. v. LG Elecs. Inc.,* No. 2:22-cv-00049-RWS, Dkt. 19, ¶¶ 18-19 (E.D. Tex. June 20, 2022); *Arigna Tech. Ltd. v. LG Elecs., Inc.,* No. 2:21-cv-00377, Dkt. 24, ¶¶ 13-14 (E.D. Tex. Jan. 26, 2022); *Seven Networks, LLC v. LG Elecs., Inc.,* No. 2:21-cv-88, Dkt. 12, ¶ 5 (E.D. Tex. June 7, 2021); *Advanced Coding Techs. LLC v. LG Elecs. Inc.,* No. 2:22-cv-00501-JRG, Dkt. 16 (E.D. Tex. Apr. 27, 2023); *WFR IP LLC v. LG Elecs., Inc.,* No. 2:22-cv-00245-RWS-RSP, Dkt. 16 (E.D. Tex. Nov. 23, 2022).

18. LG has committed acts of infringement in this District, including making sales of the accused products and providing service, support, instruction, and encouragement to customers and end users in this District who use the accused products in the manner accused

herein. Upon information and belief, accused products are shipped to customers and retailers located in this District from or through LGEUS's distribution facilities located in this District, including the Beach Street facility, and LGEUS employees in this District market, sell, and/or support the accused products.

19. Venue is convenient and fair in this District: LGEUS owns and maintains substantial physical facilities in the District and has for decades, sells the accused products to customers in the District, and Defendants have repeatedly litigated patent actions in this District without contesting venue — and LGE has chosen this District for its own affirmative patent claims.

## THE ASSERTED PATENTS

20. On August 16, 2016, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '205 Patent, entitled "Proximity-Based System for Automatic Application or Data Access and Item Tracking." A true and correct copy of the '205 Patent is attached as **Exhibit 1**.

21. On October 31, 2017, the USPTO duly and legally issued the '091 Patent, entitled "Proximity-Based System for Automatic Application or Data Access and Item Tracking." A true and correct copy of the '091 Patent is attached as **Exhibit 2**.

22. On January 1, 2019, the USPTO duly and legally issued the '460 Patent, entitled "Proximity-Based System for Automatic Application or Data Access and Item Tracking." A true and correct copy of the '460 Patent is attached as **Exhibit 3**.

23. On August 17, 2021, the USPTO duly and legally issued the '640 Patent, entitled "Proximity-Based System for Automatic Application or Data Access and Item Tracking." A true and correct copy of the '640 Patent is attached as **Exhibit 4**.

24. On August 13, 2013, the USPTO duly and legally issued the ’336 Patent, entitled “Proximity-Based Healthcare Management System with Automatic Access to Private Information.” A true and correct copy of the ’336 Patent is attached as **Exhibit 5**.

25. On December 23, 2014, the USPTO duly and legally issued the ’854 Patent, entitled “Proximity-Based System for Automatic Application Initialization.” A true and correct copy of the ’854 Patent is attached as **Exhibit 6**.

26. On September 20, 2016, the USPTO duly and legally issued the ’956 Patent, entitled “Proximity-Based System for Automatic Application Initialization.” A true and correct copy of the ’956 Patent is attached as **Exhibit 7**.

27. On February 2, 2016, the USPTO duly and legally issued the ’332 Patent, entitled “Security System and Method for Controlling Access to Computing Resources.” A true and correct copy of the ’332 Patent is attached as **Exhibit 8**.

28. On August 10, 2021, the USPTO duly and legally issued the ’979 Patent, entitled “Security System and Method for Controlling Access to Computing Resources.” A true and correct copy of the ’979 Patent is attached as **Exhibit 9**.

29. Proxense is the sole and exclusive owner of all right, title, and interest in each of the Asserted Patents, or is the exclusive licensee with the right to sue, and holds the exclusive right to take all actions necessary to enforce its rights in the Asserted Patents, including the filing of this lawsuit. Proxense also has the right to recover all damages for past, present, and future infringement of the Asserted Patents and to seek injunctive relief as appropriate under the law.

## PROXENSE AND ITS INNOVATIVE TECHNOLOGIES

30. Proxense was founded in 2001 and formally incorporated in 2005. From approximately 2004 to 2012, Proxense developed, among other things, proximity-based

detection, authentication, personalization, and automation technologies, employing over thirty engineers and investing millions of dollars in research and development.

31. Proxense's technologies are built on the concept of small wireless devices — personal digital keys ("PDKs") — that are uniquely associated with a person or object and that can be wirelessly detected, differentiated, and authenticated by sensors or readers to trigger secure, automatic, personalized action by nearby computing devices: automatic login, automatic application launch, personalized content, and automatic lockout when the user departs.

32. John Giobbi, Proxense's founder and CEO, is a named inventor on approximately 200 patents, including each of the Asserted Patents. Proxense's inventions anticipated by years the personalized, proximity-aware computing experiences that are now ubiquitous — from voice-personalized televisions to tap-and-go clinical workstations.

33. Proxense's innovations were recognized in the industry press as early as 2008-2009, including feature coverage of its "virtual wallet" and proximity-authentication technologies in The Bulletin (2008), Trend Hunter (2009), and DARKReading (2009).

34. Today, Proxense holds nearly 90 U.S. patents directed to related technology, including proximity-based authentication and personalization, secure biometric data management, automatic application initialization, and secure access control. Proxense's portfolio has been licensed by, among others, major technology companies following patent enforcement actions.

## LG'S KNOWLEDGE OF PROXENSE AND THE ASSERTED PATENTS

35. On August 10, 2016, counsel for Proxense sent a letter to Mr. Wayne Park, then CEO of LG Electronics North America, advising LG of Proxense's portfolio of "over 30 patents," enclosing a listing of those patents, and further advising of "another 20+ US patent

applications pending." A copy of the letter is attached as **Exhibit 10**. The letter enclosed examples of the relationship between Proxense's claimed inventions and LG's products.

36. Since at least August 10, 2016, LG has had actual knowledge of Proxense's patent portfolio and its growing patent pipeline, including the families from which each of the Asserted Patents issued or claims priority.

37. On June 6, 2024, Proxense filed a complaint for patent infringement against LGE and LGEUS in the United States District Court for the Western District of Texas, No. 6:24-cv-00302 (the "2024 Complaint"), asserting, among other patents, the '332 Patent and the '979 Patent. LG has had actual knowledge of the '332 Patent and the '979 Patent, and of Proxense's contention that LG products infringe Proxense's portfolio, since no later than the filing and service of the 2024 Complaint.

38. Upon information and belief, LG is a sophisticated entity with an IP management function and employees whose responsibilities include evaluating and monitoring patents brought to LG's attention that may impact LG's business. Upon information and belief, LG has been aware of the Asserted Patents, and of its infringement, since at least the times identified above and, for each Asserted Patent, no later than the filing and service of this Complaint.

39. Alternatively, to the extent LG lacked actual knowledge of any Asserted Patent, LG has been willfully blind to the Asserted Patents and to its infringement. Upon information and belief, despite receiving Proxense's 2016 notice letter identifying Proxense's portfolio and pending applications, and despite being sued on related portfolio patents in 2024, LG deliberately avoided learning of the scope of Proxense's issued patents while continuing the accused conduct, subjectively believing there was a high probability that its products infringed Proxense patents.

## THE ACCUSED PRODUCTS

### A. The Accused Personalization TVs

40. LG makes, uses, sells, offers for sale, and imports into the United States "AI" smart televisions running LG's webOS operating system, including without limitation the 2024-2026 OLED evo (B/C/G series), QNED evo, NanoCell, and Micro RGB evo model lines, together with 2022-2024 webOS TV models to which LG delivers current webOS releases through its “webOS Re:New” program (collectively, the “Accused Personalization TVs”). The Accused Personalization TVs are designed, built, and updated by LG: the hardware, the α-series processors, the webOS operating system, and the personalization features described below are all LG's own.

41. The Accused Personalization TVs implement “Voice ID” — voice-biometric recognition of individual household members. LG's U.S. marketing materials state: “LG AI TV recognizes your voice and leads you to My Page tailored just for you,” and confirm that Voice ID “is available on OLED, QNED, NANO 4K UHD TVs released from 2024 onwards, as well as on MRGB and FHD TVs released from 2026.” (LG USA, “AI TV for Smarter Viewing,” https://www.lg.com/us/tvs/tv-buying-guide/ai-tv-for-smarter-viewing.)

42. A television is a physically shared computing device: it is located in a common household area and used by multiple household members. LG's “My Page” feature maintains multiple per-user personalized pages on a single television — each household member receives a customized homepage with that user's applications, widgets, subscriptions, and recommendations. LG's materials state: “Once you set up your My Page, LG AI TV will recognize your voice and switch to your personalized page.” (*Id.*)

43. When a recognized household member speaks to the television, the television identifies which enrolled user is speaking, selects that user's named profile from among the household's enrolled users, and switches to that user's personalized environment, launching and rendering the applications, widgets, and content associated with that user's profile. TechRadar reported that, in response to voice commands, the TV recognizes who is speaking and "will switch accounts and presets accordingly." Matt Bolton, *I Saw the LG C5 OLED TV's New Personalized Sound Mode in Action, and It's the Best AI TV Feature I've Seen So Far*, TechRadar (Mar. 7, 2025), https://www.techradar.com/televisions/i-saw-the-lg-c5-oled-tvs-new-personalized-sound-mode-in-action-and-its-the-best-ai-tv-feature-ive-seen-so-far. In addition, household members' smartphones running LG's ThinQ application, each signed in to that member's LG account and each communicating with the television over the home wireless network and/or Bluetooth, are registered to and associated with the television, and each such smartphone stores and provides information particular to its user in connection with the television's multi-user personalization features.

44. LG's webOS Re:New program delivers current webOS releases, including the accused personalization features, to previously sold TV models for up to five years, such that LG continues to install and update the accused functionality on televisions in consumers' homes, including in this District.

**B. The Accused Healthcare Terminals**

45. LG makes, uses, sells, offers for sale, and imports into the United States All-in-One Thin Client terminals designed specifically for healthcare facilities, including without limitation models 24CR671IK-6P, 24CR661W, and predecessor 24CN670N-series models (the "Accused Healthcare Terminals").

46. LG announced the product line in 2021. An article in Imaging Technology News titled "LG Thin-Clients Feature Built-In RFID Capabilities Optimized for Use in Healthcare Facilities," stated that LG "introduced a new LG thin client system designed specifically for use in hospitals, urgent care facilities and other healthcare environments," and that the terminals "compl[y] with IEC 60601 for medical devices used in healthcare environments." *LG Thin-clients Feature Built-in RFID Capabilities Optimized for Use in Healthcare Facilities*, Imaging Technology News (Aug. 4, 2021), https://www.itnonline.com/content/lg-thin-clients-feature-built-rfid-capabilities-optimized-use-healthcare-facilities.

47. 48. Each Accused Healthcare Terminal ships from LG with a built-in dual-band RFID reader. LG's own materials describe the purpose of that reader: the terminals come "with built-in dual-band RFID readers, making it easy for multiple authorized healthcare professionals to log into shared resources, such as electronic health records systems and other networked applications," such that "all they have to do is hold up a compatible RFID card." (*Id.*) An LG press release likewise touts "instant login enabled through a dual-band RFID reader at the base of the screen." LG Business Solutions USA, *LG Healthcare Technologies Improve Staff and Patient Experiences* (Mar. 12, 2024), https://www.lg.com/us/business/press-release/lg-healthcare-technologies-improve-staff-and-patient-experiences?category=it.

48. LG's official product specifications for the 24CR671IK-6P state that the terminal is "Compatible with Imprivata" — the leading proximity-badge single sign-on ("SSO") platform used by U.S. hospitals — and LG offers the terminal preloaded with IGEL OS, an operating system whose healthcare configurations integrate Imprivata badge authentication. LG's product page states: "With RFID module, multiple people can use the device as a personalized thin client... allowing various staffs to log into the personal virtual desktop on a single device." (LG

Business Solutions, 24CR671IK-6P product page, https://solutions.lg.com/us/cloud-computing/lg-24cr671ik-6p.) A portion of the product page is reproduced below:




49. The clinician badges used with the Accused Healthcare Terminals are wireless credential devices. Upon information and belief, representative deployments of the Accused Healthcare Terminals use 13.56 MHz smart credentials (such as HID iCLASS, iCLASS SE/SEOS, and MIFARE DESFire credentials) read by the terminals' dual-band RFID readers; each such credential comprises an antenna and transceiver circuitry for communicating wirelessly with the reader, together with an integrated circuit and memory storing credential information uniquely associated with the individual clinician, and communicates that information to the reader in encrypted form.

50. In deployment, the Accused Healthcare Terminals operate as proximity-badge SSO clinical workstations: a clinician taps or approaches with an RFID badge uniquely associated with that clinician; the terminal's built-in reader wirelessly reads the badge; the SSO platform authenticates the clinician and automatically initiates the clinician's session, automatically launching the clinician's virtual desktop and electronic health record ("EHR")

applications; when a second clinician taps their badge, the workstation switches to the second clinician's session ("tap-over"); and when the clinician departs or taps out, the session is automatically secured or logged out. Platform documentation describes "shared workstation workflows including fast user switching and badge-based authentication that align with 'tap, turn, and treat' clinical patterns," in which "[e]very user switch clears the environment completely." Jason Mafera, *Badge Tap to Browser: Imprivata Web SSO on IGEL OS Redefines Shared Access*, IGEL (Mar. 31, 2026), https://www.igel.com/blog/imprivata-web-sso/.

51. The badge-authentication platforms with which LG's terminals are designed to operate maintain, for each user profile, authentication state including re-authentication grace periods — intervals of time from when the user's credentials were last fully authenticated, within which a badge tap alone re-establishes the user's session without requiring full re-authentication.

**C. LG's Role in, and Active Inducement of, the Infringing Healthcare Systems**

52. Upon information and belief, LG may contend that the Accused Healthcare Terminals are supplied as hardware whose SSO software environment is configured by third parties or by customers. Any such contention does not diminish LG's liability, because LG's own conduct — its purposeful hardware design, its software preloads, its specifications, its marketing, its demonstrations, and its instructions — is directed to one end: the use of the Accused Healthcare Terminals in the accused proximity-badge SSO systems.

53. *LG purpose-builds the hardware for the accused use.* LG designs the Accused Healthcare Terminals with built-in dual-band RFID readers. Upon information and belief, the built-in dual-band RFID reader has no substantial use in the Accused Healthcare Terminals other than proximity-badge authentication of users to shared clinical computing resources — the use LG itself advertises ("instant login," "hold up a compatible RFID card"). A customer who

wanted a general-purpose thin client without badge login would have no use for the integrated dual-band RFID reader; LG builds, prices, and markets that reader for the accused use.

54. *LG ships the accused software environment.* LG offers and sells the Accused Healthcare Terminals preloaded with IGEL OS and expressly specifies compatibility with Imprivata in LG's own published specifications. Upon information and belief, LG configures, certifies, validates, and/or tests the terminals, including their integrated RFID readers, for operation with Imprivata and IGEL badge-authentication software prior to and in connection with sale.

55. *LG instructs and encourages the accused use.* LG publishes product pages, specifications, press releases, sales materials, and support documentation that instruct and encourage hospitals, health systems, integrators, and clinicians to use the Accused Healthcare Terminals in proximity-badge SSO systems — including LG's statements that the terminals allow “multiple authorized healthcare professionals to log into shared resources” by “hold[ing] up a compatible RFID card,” and that “multiple people can use the device as a personalized thin client... log[ging] into the personal virtual desktop on a single device.”

56. *LG demonstrates the complete infringing systems itself.* At industry trade shows including HIMSS 2024 and HIMSS 2025, LG — together with its partners IGEL, rfIDEAS, and/or Imprivata — assembled and operated complete, working badge-login systems on the Accused Healthcare Terminals, demonstrating “instant login” and “personalized access” workflows to prospective hospital customers. In doing so, LG itself used the complete claimed systems and performed the claimed methods in the United States.

57. *LG sells into a known ecosystem.* Upon information and belief, LG sells the Accused Healthcare Terminals to hospitals and health systems — including systems operating in

Texas and in this District — knowing that they will be deployed with Imprivata or equivalent badge-SSO platforms, because badge-based SSO is the very feature LG uses to differentiate and sell the product, and because LG's own specifications identify Imprivata compatibility.

58. The direct infringers of the healthcare-related Asserted Patents include: (a) LG itself, through its assembly, configuration, testing, operation, and demonstration of complete accused systems in the United States; (b) hospitals, health systems, and clinics that deploy and use the Accused Healthcare Terminals in proximity-badge SSO systems; (c) systems integrators and IT service providers that assemble and configure such systems; and (d) clinicians and staff who use the systems — each of whom makes or uses the claimed systems and/or performs the claimed methods. LG's knowledge of, encouragement of, and material contribution to that direct infringement are detailed herein and in the counts below.

**COUNT I — INFRINGEMENT OF THE ’205 PATENT**
**(Accused Personalization TVs)**

59. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

60. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’205 Patent.

61. LG has directly infringed and continues to directly infringe at least claim 1 of the ’205 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using (including through testing, demonstration, and operation), selling, offering for sale, and importing into the United States the Accused Personalization TVs. Proxense contends each limitation is met literally and, to the extent any limitation is not met literally, it is met under the doctrine of equivalents.

62. For example, each Accused Personalization TV is a system with one or more processors and memory with instructions (LG's α-series processor and webOS software) that:

determines that the television — located in a common household area — is a physically shared computing device; applies access prerequisites for the shared device that include biometric authentication (Voice ID voice recognition) and selection of a user name (identification and selection of the recognized household member's named profile from among the household's enrolled users); receives profiles associated with multiple household users from their respective smartphones running the LG ThinQ application — each such smartphone being an operably connected collection of elements including an antenna, a transceiver, a controller, and memory storing information particular to its user, including that member's LG-account profile — registered to and communicating with the television within the home wireless environment; identifies the user name associated with each biometrically recognized user; and, upon Voice ID recognition of a given user, launches the applications, widgets, and content of that user's personalized My Page based on that user's profile. A claim chart demonstrating infringement of representative claim 1 is attached as **Exhibit 11**.

63. LG has induced and continues to induce infringement of one or more claims of the '205 Patent under 35 U.S.C. § 271(b). Consumers and end users of the Accused Personalization TVs directly infringe, literally or under the doctrine of equivalents, when they enroll Voice ID, configure My Page profiles for multiple household members, pair their smartphones and ThinQ accounts with the television, and use the accused personalization features as LG designs and intends. LG induces that direct infringement by: designing and shipping the accused features enabled in webOS; providing on-screen setup flows that walk users through Voice ID enrollment, My Page configuration, and ThinQ pairing; publishing user guides, support articles, marketing pages, and videos instructing users to enroll and use Voice ID and My Page; and delivering webOS updates (including via the webOS Re:New program) that

install and promote the accused features on the installed base. LG performs these affirmative acts with knowledge of the ’205 Patent and with the intent — or, at minimum, willful blindness — that the induced acts constitute direct infringement.

64. LG has contributed and continues to contribute to infringement of one or more claims of the ’205 Patent under 35 U.S.C. § 271(c) by selling, offering to sell, and importing the Accused Personalization TVs with the Voice ID/My Page personalization components, which constitute a material part of the claimed inventions, are especially made and adapted for use in an infringement of the ’205 Patent, are not staple articles of commerce, and have no substantial non-infringing use.

65. LG has had knowledge of the ’205 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

66. Proxense has been damaged by LG's infringement of the ’205 Patent in an amount to be proven at trial, and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284. LG's continued infringement is causing irreparable harm for which there is no adequate remedy at law, entitling Proxense to injunctive relief under 35 U.S.C. § 283.

**COUNT II — INFRINGEMENT OF THE ’091 PATENT**
**(Accused Personalization TVs)**

67. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

68. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the '091 Patent.

69. LG has directly infringed and continues to directly infringe at least claims 1 and 16 of the ’091 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and importing the Accused Personalization TVs. Claim

1 of the ’091 Patent recites a system that determines prerequisites for accessing a physically shared computing device — prerequisites that include biometric authentication and selection of a user name and that differ from those of a non-shared device — identifies user names upon biometric authentication of first and second users, receives a selected user name from the group, and launches one or more applications based on the selected user name. The Accused Personalization TVs perform exactly this operation through Voice ID and My Page, as alleged *supra*: the shared living-room television gates each user's personalized environment on voice-biometric recognition (LG's materials identify voice recognition; the ’091 Patent expressly identifies a "voice analyzer" as a biometric reader, claim 5) plus identification and selection of the recognized user's named profile, then launches that user's applications and personalized page. A claim chart demonstrating infringement of representative claim 1 is attached as **Exhibit 12**.

70. LG has induced and continues to induce infringement of one or more claims of the ’091 Patent under 35 U.S.C. § 271(b), and has contributed and continues to contribute to such infringement under 35 U.S.C. § 271(c), for the same reasons and through the same affirmative acts alleged *supra*: LG ships the accused features, instructs consumers to enroll and use Voice ID and My Page through setup flows, guides, and marketing, and updates the installed base with the accused functionality, knowing and intending (or remaining willfully blind) that consumers' resulting use directly infringes; and the Voice ID/My Page components are material, especially adapted for the infringing use, and lack substantial non-infringing uses.

71. LG has had knowledge of the ’091 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

72. Proxense has been damaged by LG's infringement of the ’091 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

**COUNT III — INFRINGEMENT OF THE ’460 PATENT**
**(Accused Personalization TVs and Accused Healthcare Terminals)**

73. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

74. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’460 Patent.

75. LG has directly infringed and continues to directly infringe at least claims 1 and 16 of the '460 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using (including through testing and trade-show demonstration), selling, offering for sale, and importing the Accused Personalization TVs and the Accused Healthcare Terminals. Claim 1 of the '460 Patent recites a system that determines prerequisites — including an authentication and selection of a user name — for accessing a computing device that is physically shared by a plurality of users; identifies a user name upon authentication of each of a first and second user; receives the first user name as a selected user name from the group; and launches one or more applications based on the selected user name.

76. The Accused Personalization TVs meet these limitations through Voice ID/My Page multi-user personalization as alleged above. The Accused Healthcare Terminals meet these limitations in badge-SSO operation: the clinical workstation is physically shared by a plurality of clinicians; access prerequisites include authentication (badge tap and associated credential verification) and selection of the authenticated clinician's user identity from among the users known to the system; and upon selection, the system launches the clinician's virtual desktop and EHR applications based on the selected user's profile. A claim chart is attached as **Exhibit 13**.

77. LG has induced and continues to induce infringement of one or more claims of the ’460 Patent under 35 U.S.C. § 271(b). As to the Accused Personalization TVs, LG induces consumers' directly infringing use through the acts alleged *supra*. As to the Accused Healthcare Terminals, hospitals, health systems, integrators, and clinicians directly infringe when they deploy and use the terminals in badge-SSO systems, and LG induces that infringement through the affirmative acts alleged *supra*: purpose-building and shipping terminals with integrated dual-band RFID readers; preloading IGEL OS and specifying Imprivata compatibility; publishing specifications, product pages, press releases, and support materials instructing the badge-login use; co-marketing and demonstrating complete working systems with IGEL, rfIDEAS, and/or Imprivata at HIMSS and elsewhere; and selling the terminals to health systems knowing they will be deployed in badge-SSO configurations. LG performs these acts with knowledge of the ’460 Patent and with intent — or willful blindness — that the induced acts constitute direct infringement.

78. LG has contributed and continues to contribute to infringement of one or more claims of the ’460 Patent under 35 U.S.C. § 271(c) by selling, offering to sell, and importing the Accused Healthcare Terminals with integrated dual-band RFID readers: the terminals with their readers are a material part of the claimed inventions, are especially made and especially adapted for use in proximity-badge SSO systems that infringe the ’460 Patent, are known by LG to be so made and adapted (as LG's own specifications and marketing confirm), are not staple articles of commerce suitable for substantial non-infringing use, and — in particular as to the integrated dual-band RFID reader — have no substantial use other than the accused badge-authentication use.

79. LG has had knowledge of the ’460 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

80. Proxense has been damaged by LG's infringement of the ’460 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

**COUNT IV — INFRINGEMENT OF THE ’640 PATENT**
**(Accused Healthcare Terminals)**

81. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

82. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the '640 Patent.

83. LG has directly infringed and continues to directly infringe at least claims 1, 13, and 17 of the ’640 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents. Claim 17 is a device claim directed to a device comprising a reader configured to wirelessly communicate with a personal digital key (a badge) carrying a profile uniquely associated with an authorized user and an authentication interval of time, together with an authentication server configured to log out the user after the personal digital key exceeds a defined proximity to the device. LG directly infringes at least by making, using, operating, and demonstrating complete accused systems — including at HIMSS 2024 and HIMSS 2025, where LG and its partners assembled and operated working badge-login systems on the Accused Healthcare Terminals — and by selling and offering for sale the Accused Healthcare Terminals in configurations (including IGEL OS preloads specified as Imprivata-compatible) especially designed for the claimed system. Claim 13 confirms the accused context: "the device is a computer workstation in

a healthcare facility." A claim chart demonstrating infringement of representative claims is attached as **Exhibit 14**.

84. Hospitals, health systems, integrators, and clinicians directly infringe at least claims 1, 13, and 17 of the ’640 Patent when they deploy and use the Accused Healthcare Terminals in proximity-badge SSO systems in which the clinician's badge carries the profile and associated authentication-interval data, the terminal's built-in reader receives them, and the system automatically logs the user out upon badge departure or tap-over.

85. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra*, performed with knowledge of the ’640 Patent and with the specific intent to bring about the infringing use — an intent demonstrated by, among other things: LG's integration of the dual-band RFID reader into the hardware; LG's IGEL OS preload and published Imprivata-compatibility specification; LG's advertising of “instant login” badge workflows for “multiple authorized healthcare professionals”; LG's assembly and operation of complete infringing systems at trade shows; and LG's continued sale and promotion of the terminals for badge-SSO deployment after notice of the ’640 Patent.

86. LG has contributed and continues to contribute to infringement of the ’640 Patent under 35 U.S.C. § 271(c): the Accused Healthcare Terminals with integrated dual-band RFID readers constitute a material part of the claimed system, are especially made and adapted for use in the claimed badge-login/auto-logout systems, are known by LG to be so made and adapted, are not staple articles of commerce, and — particularly the integrated dual-band RFID reader — have no substantial non-infringing use.

87. LG has had knowledge of the ’640 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

88. 89. Proxense has been damaged by LG’s infringement of the ’640 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

**COUNT V — INFRINGEMENT OF THE ’336 PATENT**
**(Accused Healthcare Terminals)**

89. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

90. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’336 Patent.

91. LG has directly infringed and continues to directly infringe at least claim 1 of the ’336 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using, operating, and demonstrating complete accused systems in the United States (including trade-show operation of working badge-login systems) and by making, selling, offering for sale, and importing the Accused Healthcare Terminals for use in such systems. Claim 1 recites a healthcare management system with automatic access to information comprising a first PDK (the healthcare provider's badge) including a profile uniquely associated with the provider; a provider interface coupled to a reader configured to differentiate among multiple PDKs within the proximity zone, select a PDK based on accumulated PDK data, and receive profile information from the selected PDK; and an auto-login server that allows access, while the provider's PDK is within the proximity zone, to information in a patient database based on the received profile information. In deployment, the Accused Healthcare Terminal's built-in dual-band RFID reader differentiates among clinicians' badges, the SSO platform selects and authenticates the presented

badge, and the clinician is automatically logged into EHR systems — access to the patient database — while badged in. A claim chart is attached as **Exhibit 15**.

92. Hospitals, health systems, integrators, and clinicians directly infringe at least claim 1 of the ’336 Patent when they deploy and use the Accused Healthcare Terminals in badge-SSO systems providing automatic clinician access to EHR patient databases. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra* — purpose-built RFID hardware, IGEL preloads and Imprivata-compatibility specifications, instructing materials, complete-system demonstrations, and ecosystem sales — performed with knowledge of the ’ 336 Patent and specific intent that customers use the terminals in the infringing manner, or with willful blindness to the same.

93. LG has contributed and continues to contribute to infringement of the ’336 Patent under 35 U.S.C. § 271(c) for the reasons alleged *supra*: the terminals with integrated dual-band RFID readers are material to the claimed healthcare management system, especially made and adapted for the infringing use, not staple articles, and without substantial non-infringing use.

94. LG has had knowledge of the ’336 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

95. Proxense has been damaged by LG's infringement of the ’336 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

## **COUNT VI — INFRINGEMENT OF THE ’854 PATENT (Accused Healthcare Terminals)**

96. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

97. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’854 Patent.

98. LG has directly infringed and continues to directly infringe at least claim 1 of the '854 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using, operating, and demonstrating complete accused systems in the United States and by making, selling, offering for sale, and importing the Accused Healthcare Terminals for use in such systems. Claim 1 recites a system with automatic access to information comprising a first PDK with a profile uniquely associated with a user having a user priority; a reader receiving profile information from the PDK; a computing device displaying data responsive to the profile information; an autologin server that automatically initiates a login of the identified user; an application server that automatically launches one or more applications responsive to the login; and a second PDK whose user can take over the session or device based on relative user priority. In deployment, the badge tap automatically logs the clinician in and automatically launches the clinician's virtual desktop and EHR applications, and a second clinician's badge takes over the workstation through fast user switching. A claim chart is attached as **Exhibit 16**.

99. Hospitals, health systems, integrators, and clinicians directly infringe at least claim 1 of the ’854 Patent when they deploy and use the Accused Healthcare Terminals in badge-SSO systems with automatic login, automatic application launch, and tap-over user switching. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra*, with knowledge of the ’854 Patent and specific intent, or willful blindness, as alleged above.

100. LG has contributed and continues to contribute to infringement of the '854 Patent under 35 U.S.C. § 271(c) for the reasons alleged *supra*.

101. LG has had knowledge of the ’854 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

102. Proxense has been damaged by LG's infringement of the ’854 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

## COUNT VII — INFRINGEMENT OF THE ’956 PATENT (Accused Healthcare Terminals)

103. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

104. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’956 Patent.

105. LG has directly infringed and continues to directly infringe at least claim 1 of the ’956 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using, operating, and demonstrating complete accused systems in the United States and by making, selling, offering for sale, and importing the Accused Healthcare Terminals for use in such systems. Claim 1 recites a system in which a reader detects first and second PDKs within a proximity zone and a shared computing device provides access to the first user upon detection of the first PDK and then, upon detection of the second PDK, provides the second user access to the shared computing device or the first user's session based on determining the second user's priority relative to the first user's. In deployment, the Accused Healthcare Terminals operate exactly this “tap-over” shared-workstation workflow: the first clinician badges in; a second clinician's badge tap switches the workstation to the second clinician pursuant to the platform's user-switching and session policies. A claim chart is attached as **Exhibit 17**.

106. Hospitals, health systems, integrators, and clinicians directly infringe at least claim 1 of the ’956 Patent when they deploy and use the Accused Healthcare Terminals with badge-based fast user switching on shared clinical workstations. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra*, with knowledge of the ’956 Patent and specific intent, or willful blindness, as alleged above.

107. LG has contributed and continues to contribute to infringement of the ’956 Patent under 35 U.S.C. § 271(c) for the reasons alleged *supra*.

108. LG has had knowledge of the ’956 Patent and its infringement since at least the filing and service of this Complaint, and earlier by virtue of the facts alleged *supra*. LG's infringement has been and continues to be willful.

109. Proxense has been damaged by LG's infringement of the ’956 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

**COUNT VIII — INFRINGEMENT OF THE ’332 PATENT**
**(Accused Healthcare Terminals)**

110. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

111. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’332 Patent.

112. LG has directly infringed and continues to directly infringe at least claim 1 of the ’332 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using, operating, and demonstrating complete accused systems in the United States and by making, selling, offering for sale, and importing the Accused Healthcare Terminals for use in such systems. Claim 1 recites a system for securing computing resources comprising a PDK

storing security data used to access a particular computing resource; a reader that automatically detects the PDK within a predefined range and signals a computing device whether it is linked; and a computing device with a security system controlling access to computing resources based on security set up data — stored in a dedicated encrypted portion of memory, describing how to control access (including biometric confirmation options for particular resources) without including the security data itself. In deployment, the clinician's badge carries the credential; the terminal's reader automatically detects it; and the SSO platform's policy configuration governs which resources unlock, what additional confirmation is required (including second-factor or biometric confirmation for sensitive workflows such as medication ordering), and what happens on badge departure. A claim chart is attached as **Exhibit 18**.

113. Hospitals, health systems, integrators, and clinicians directly infringe at least claim 1 of the ’332 Patent when they deploy and use the Accused Healthcare Terminals in badge-SSO systems configured as described above. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra*, with knowledge of the ’332 Patent — actual knowledge since no later than the 2024 Complaint — and specific intent, or willful blindness, as alleged above.

114. LG has contributed and continues to contribute to infringement of the ’332 Patent under 35 U.S.C. § 271(c) for the reasons alleged *supra*.

115. LG has had actual knowledge of the ’332 Patent since no later than June 2024, when Proxense asserted the ’332 Patent against LG in the 2024 Complaint, and has continued its infringing conduct notwithstanding that knowledge. LG's infringement of the ’332 Patent has been and continues to be willful, entitling Proxense to enhanced damages under 35 U.S.C. § 284.

116. Proxense has been damaged by LG's infringement of the ’332 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

**COUNT IX — INFRINGEMENT OF THE ’979 PATENT**
**(Accused Healthcare Terminals)**

117. Proxense repeats and realleges all preceding paragraphs as if fully set forth herein.

118. Proxense has not licensed or otherwise authorized LG to make, use, offer for sale, sell, or import any products that embody the inventions of the ’979 Patent.

119. LG has directly infringed and continues to directly infringe at least claims 1 and 12 of the ’979 Patent under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, at least by using, operating, and demonstrating complete accused systems in the United States and by making, selling, offering for sale, and importing the Accused Healthcare Terminals for use in such systems. Claim 1 recites a computing device comprising a processor; a data storage device including protected items; a vault storage storing set up records, each corresponding to a protected item and storing a process including a specific security action to be automatically performed to grant or deny access; and a detection engine that determines whether access is permitted based on detecting a PDK within a predefined range and automatically performs the security action from the retrieved set up record. In deployment, the Accused Healthcare Terminal detects the clinician's badge in range; the SSO platform retrieves the stored policy/profile record for the protected resource (the virtual desktop, the EHR application, the login screen); and the configured security action is automatically performed — including, as the ’979 Patent's dependent claims describe, automatically filling a field of a login screen and submitting a login in response to validation of the personal digital key (claim 15), biometric authentication (claim 16), and security actions and triggering events including presentation of a login screen, clearing a

screen saver, and launching an application (claims 18-19). These dependent claims describe the accused badge-SSO login automation with striking precision. A claim chart is attached as **Exhibit 19**.

120. Hospitals, health systems, integrators, and clinicians directly infringe at least claims 1 and 12 of the ’979 Patent when they deploy and use the Accused Healthcare Terminals in badge-SSO systems that automatically perform configured security actions — automatic credential fill and submission, screen unlock, application launch, and session lock — in response to badge detection. LG has induced and continues to induce that direct infringement under 35 U.S.C. § 271(b) through the affirmative acts alleged *supra*, with knowledge of the ’979 Patent — actual knowledge since no later than the 2024 Complaint — and specific intent, or willful blindness, as alleged above.

121. LG has contributed and continues to contribute to infringement of the ’979 Patent under 35 U.S.C. § 271(c) for the reasons alleged *supra*.

122. LG has had actual knowledge of the ’979 Patent since no later than June 2024, when Proxense asserted the ’979 Patent against LG in the 2024 Complaint, and has continued its infringing conduct notwithstanding that knowledge. LG's infringement of the ’979 Patent has been and continues to be willful, entitling Proxense to enhanced damages under 35 U.S.C. § 284.

123. Proxense has been damaged by LG's infringement of the ’979 Patent and is entitled to no less than a reasonable royalty under 35 U.S.C. § 284, and to injunctive relief under 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Proxense respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

A. A judgment that Defendants have infringed, directly and indirectly, one or more claims of each of the Asserted Patents;

B. An award of damages adequate to compensate Proxense for Defendants' infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest and costs;

C. A judgment that Defendants' infringement has been willful, and an award of enhanced damages up to treble the amount found or assessed, pursuant to 35 U.S.C. § 284;

D. A finding that this case is exceptional under 35 U.S.C. § 285 and an award to Proxense of its reasonable attorneys' fees;

E. A permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendants and their officers, agents, servants, employees, and those persons in active concert or participation with them from further infringement of the Asserted Patents, or, in the alternative, an award of an ongoing royalty for post-judgment infringement; and

F. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Proxense demands a trial by jury on all issues so triable.

Dated: October 23, 2026

By: /s/ David L. Hecht
David L. Hecht
dhecht@hechtpartners.com
Texas Bar No. 24136516
HECHT PARTNERS LLP
111 Congress Avenue, Suite 500
Austin, TX 78701

*Attorneys for Plaintiff Proxense, LLC*